UNITED STATES of America, Plaintiff,

v.

Joseph GALLO, Joseph Corrao, and James Failla, et al., Defendants.

No. 86–CR–452(S) (JBW).

United States District Court,
E.D. New York.

June 1, 1987.

## 6/1/87 RULING ON MOTION IN LIMINE, ORGANIZED CRIME EXPERTS

WEINSTEIN, Chief Judge.

Defendants seek a limitation on the use of "expert" testimony by F.B.I. agents or other knowledgeable persons. Except as indicated below, the motion is denied.

Defendants are particularly concerned that the procedure used in *United States v. Daly*, 668 F.Supp. 736 (E.D.N.Y.1987), not be used in this case. *Daly* was a labor-union-organized-crime case in which an F.B.I. agent testified at great length about the background of the organized crime system, particularly as it applied to labor unions in the metropolitan New York area.

At the beginning of the agent's testimony in *Daly*, the court instructed the jury that this witness' testimony was in large measure based upon hearsay and was to be treated very carefully and given limited weight as background only so that they could better understand the evidence. This instruction was protective of the defendants.

All of the agent's opinions could have been classified as expert opinion under Rule 702 of the Federal Rules of Evidence. It would then be allowed in with only a cautionary instruction about experts and their credibility. This kind of testimony clearly falls within the definition of expert testimony, since it is helpful to the jury— that is, it "will assist" them. *See* Rule 702 of the Federal Rules of Evidence.

It must be understood that the average jury, although exposed to a good deal of television and newspaper publicity, is likely to know very little about the methods of operation of organized crime. In order to conduct a trial it is necessary to assume that the trier of fact has a great deal of familiarity with the way the relevant institution or organization operates. Were the case to involve, for example, the way a supermarket conducts its food distribution on the shelves and at the cash register, the average juror would be assumed to know enough about these practices to draw reasonable inferences. Of course, were the case to be tried in the Soviet Union, a complete explanation by an expert, such as the ordinary American shopper, would be required to permit a trier to draw the normal inferences about American practices which jurors here can draw without further instruction.

While not falling within the scope of judicial notice, as that term is used in Federal Rule of Evidence 201, this background knowledge must be assumed to exist in the minds of the trier. The court will take judicial notice of the general background knowledge—evidential hypotheses—that the trier 1) needs, and 2) has or does not have. The court must decide whether it can confidently assume that the trier brings such background knowledge to the courtroom to be used in conjunction with additional information—adjudicative facts —supplied by evidence. *Cf.* Fed.R.Evid. 201(a). From the background (evidential hypotheses) and the detailed evidence (adjudicative facts), the jurors can draw necessary conclusions.

In short, the trial is an instructional experience in which the jury learns by drawing inferences and applying specific propositions of fact to general evidential hypotheses—i.e., background knowledge.

In the case of organized crime, one way to supply that background knowledge is through the use of numerous witnesses who would describe a plethora of individual incidents, permitting the jury, by inductive reasoning, to conclude how the organized crime system operates. The jury would then be supplied with specific pieces of information relating to the defendants and, using a form of deductive reasoning, conclude that material propositions required to be proven by the prosecution have or have not been established beyond a reasonable doubt. This piecemeal method of inductive-deductive reasoning is highly inefficient, and may possibly prove confusing to the jury.

The trial judge must be permitted a very wide discretion in determining how the case should proceed. *See* Rule 611 of the Federal Rules of Evidence. *Cf.* Rule 102 and Rule 201 of the Federal Rules of Evidence.

In this case, the court, having tried a substantial number of cases involving this problem, and being advised of much of the evidence to be introduced in the instant trial, is convinced that the protection of the defendant as well as the government requires that an "expert" be permitted to summarize knowledge gained by law enforcement officials—and more particularly himself—over many years, as background for the use of jurors in deciding the specific issues of fact necessary in the trial of the case.

When the court proceeds in this way, Rules 702 and 703 of the Federal Rules of Evidence permit the expert to rely on hearsay as the foundation for his or her opinions. It is not necessary for the court to instruct the jury with respect to this hearsay and other dangers associated with reliance by experts on non-admissible evidence. In the *Daly* case, the court instructed the jury on the dangers of excessive reliance upon the hearsay used by the expert. This instruction, while not required, is beneficial to the defendants and is protective of their interests. It was repeated at the instant trial. It is certainly not error for the court to do *more* than is required in limiting and warning the jury. *See* the proposed Rule 107 of the Federal Rules of Evidence, not adopted by Congress.

The court will carefully supervise the expert testimony and instruct the jury as well as counsel as needed. Counsel should be extremely careful not to allow any expert to go beyond the confines of what is absolutely required in forming a basis for his testimony. If at any time defense counsel wish an expert to supply the basis for his opinions, they may request that it be obtained on direct examination, or they may elicit such information on cross-examination. *See* Rule 705 of the Federal Rules of Evidence.

In a number of instances, specific corroborative information will be required to substantiate an expert's conclusions. For example, where the expert says that a voice on a tape is that of "Y," based upon voice identification or other information, this supplementary information will have to be supplied through detailed evidence which complies with the usual rules of admissibility, unless the expert has direct knowledge. If the expert says that a certain reference or nickname refers to person "Z," there must be corroborative evidence to establish that fact. If the expert is testifying, however, with respect to the meaning of certain basic jargon, he may utilize his expert knowledge without further basis.

So ordered.